Arthur J. Reilly v. Commissioner.
Reilly v. Commissioner
Docket No. 10581.
United States Tax Court
1947 Tax Ct. Memo LEXIS 218; 6 T.C.M. (CCH) 491; T.C.M. (RIA) 47123; May 6, 1947
*218 I. W. Sharp, Esq., 630 Bulkley Bldg., Cleveland, Ohio, for the petitioner. Wesley A. Dierberger, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: This case involves a deficiency determined by the Commissioner in income and victory tax liability in the amount of $1,672.55 for the calendar year 1943. A computation of income tax for the calendar year 1942 is involved, however, three-fourths of which is forgiven and one-fourth of which is included in the tax determined to be payable in 1943. The question for determination is as to whether or not there was partnership for Federal income tax purposes between petitioner and his wife in the taxable years 1942 and 1943 in conducting a compensation service, actuarial service, safety engineering and insurance business under the name of A. J. Reilly Company. The Commissioner determined there was no such partnership and taxed the entire income of A. J. Reilly Co. for both years to the petitioner allowing a salary deduction for petitioner's wife in the amount of $3,600. Findings of Fact This case was submitted upon a stipulation of facts and evidence adduced at the hearing. We adopt *219 the stipulation as written but for the purpose of this opinion, the following facts are deemed sufficient. Petitioner is an individual who resided during 1942 and 1943 in Lakewood, Ohio. At the time of the hearing he resided in Cleveland, Ohio, and filed his income tax returns for the calendar years 1942 and 1943 with the collector of internal revenue for the eighteenth district of Ohio at Cleveland. His income tax returns are on a cash basis. In April 1935 petitioner, who had been engaged in the business of rendering service to employers on employee compensation cases, in actuarial matters, safety engineering and insurance business, sold a half interest in that business to one J. J. Nelson and thereupon took said Nelson as a partner. Nelson's service to the partnership was very restricted and petitioner's wife, Gladys J. Reilly, began assisting in the office in 1935 and in 1936 she was devoting full time to this service. She did general office work consisting of detailed work on reports, caring for correspondence and bookkeeping. By the partnership agreement petitioner received $200 per month as salary before a division of profits with Nelson. This amount was increased to $433 *220 per month in 1939 and included compensation for the services of Mrs. Reilly. In 1937 petitioner and his wife had a conversation to the effect that they were partners in petitioner's interest in the partnership but information of this relationship was not conveyed to Nelson, nor was it reflected on the partnership books. However, at the Central National Bank of Cleveland, where the partnership known as "A. J. Reilly Co." kept its account, the partnership filed a statement listing the partners as A. J. Reilly, J. J. Nelson and G. J. Reilly. In October 1939 Reilly entered into an agreement of dissolution with J. J. Nelson and purchased his interest in the partnership. Thereafter Reilly informed his wife that she was now a full partner but no other verbal or written agreement was entered into to carry out that agreement. The bank account was continued in the same bank and under the same partnership notice as formerly. A partnership return of income was filed for that portion of 1939 up to the purchase of Nelson's interest and in that return A. J. Reilly and J. J. Nelson were listed as the partners. Neither Reilly nor his wife kept any separate bank account. All moneys were deposited *221 in the account of "A. J. Reilly Co." and Reilly and his wife drew therefrom as their needs required. There was no accounting between Reilly and his wife. Petitioner and his wife made joint income tax returns for the calendar years 1939, 1940 and 1941. The combined net taxable income of petitioner and his wife as disclosed by their income tax returns is as follows: 1940
$ 6,173.69
1941
4,246.12
1942
8,255.87
1943
18,236.60
The petitioner filed a partnership return for the year 1942 and 1943 in said returns stated that the partnership of A. J. Reilly and Gladys J. Reilly was created January 1, 1942. The books of account of A. J. Reilly Co. do not show any capital interest of Gladys J. Reilly. The business of A. J. Reilly Co. is one of personal service to clients and requires only nominal capital. During 1942 and 1943 petitioner was on the road four or five days out of each week. During this time Mrs. Reilly had complete charge of the office, all correspondence, banking and billing work. She employed an assistant who was a trained statistician. Petitioner's work required much detailed record work. During this time also Mrs. Reilly frequently appeared *222 before the Cleveland representative of the Ohio Industrial Commission representing clients and when necessary she employed attorneys. On weekends, jointly with her husband, Mrs. Reilly collaborated in preparing a system of forms for office use and necessary reports. During these two taxable years she spent on an average of sixty hours per week in the office, except during a period of illness in the fall of 1942, at which time petitioner found it necessary to remain in the Cleveland office as there was no one available to do the work which his wife was trained to do. The increase in the income of A. J. Reilly Co. during 1942 and 1943 was due to the increased business of the firm's clients rather than to new clients coming to the firm. In 1940 petitioner and his wife had occasion to borrow funds to meet the bills of A. J. Reilly Co. They both obligated themselves on these notes, one for $240 and one for $260. The notes were repaid out of firm receipts. Opinion The Commissioner questions the existence of a bona fide partnership between petitioner and his wife for income tax purposes because the partnership agreement was indefinite in its terms; there was no holding out to the *223 public of a partnership; there were no partnership income tax returns filed for the years 1939, 1940 and 1941; and the partnership returns which were filed in 1942 and 1943 assigned a date for the beginning of the partnership (January 1, 1942) differing from the date of the origin of the partnership as testified to by the partners. We will temporarily postpone the discussion of these objections except to observe that they do point out one very obvious situation and that is that if a partnership were created in 1939 it was not done for the purpose of tax avoidance. If the taxpayer and his wife had been interested in the effect of the partnership on their income tax obligations they most assuredly would have taken all the steps above enumerated which they did not take and to which the respondent takes exception. It would have been an easy matter to have arranged a written partnership agreement, to have filed partnership returns instead of joint returns, and to have published the existence of the partnership. Since these things were not done, the condition which the Court found in and , *224 wherein it was held that the partnership was formed for the purpose of avoiding taxes, does not exist in the case at bar. Nor do we have a situation in this case such as existed in , in which the taxpayer merely stated that "he considered himself and his wife partners" and in which the Court found that "petitioner's wife traveled with him on his business trips and rendered some service in connection with his work." Testimony in the case at bar differs from that in the Felton case in that in 1939, following the separation from Nelson, Reilly stated to his wife that she was then his partner and following that agreement Mr. and Mrs. Reilly in conduct of the business acted as any two normal partners act. The assistance which Mrs. Reilly rendered was not merely "some service" on business trips. Mrs. Reilly's service consisted in running the office completely during practically all of the work week while Reilly was traveling among his various clients. On his return he and his wife collaborated on the records and on the business forms. His testimony is that her services were practically indispensable and that without them he could not have run his office *225 until after he had had at least five years to train someone to take Mrs. Reilly's place. He says: Due to the nature, the highly technical nature of our business and the - and it's almost an impossibility to find anybody with sufficient experience to replace Mrs. Reilly. * * * It would require, conservatively, oh, I would say better than five years to train a person to do the work that Mrs. Reilly is doing. * * * When she was ill. And we were in just absolute turmoil. I was forced then to stay in the office and try to piece things together, and with my knowledge of the business, I was completely stumped. We were hogtied until she got back. In 1940 Mrs. Reilly extended her own credit on two occasions to borrow money to meet the bills of the firm. The Tower case supra contains the following: * * * A partnership is generally said to be created when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses. * * * ( Cox v. Hickman, 8 H. L. Cas., 268.) We see no reason why this general rule should not apply in tax cases where the Government *226 challenges the existence of a partnership for tax purposes. * * * The indefiniteness of the partnership agreement whereby Reilly said to his wife: "You are now my partner." does not impress us as being a cogent argument against the actual creation of a partnership because practically all of the assets of the partnership were in the bank account. Mrs. Reilly had previously been listed as a partner. She had undisturbed access to all of the partnership assets, each of the partners could effect an accounting at any time they desired and, of course, either could dissolve the partnership at will by the simple process of discontinuing partnership activities. The fact that a detailed and comprehensive partnership agreement was not executed in this case we do not feel under the circumstances surrounding the formation of the partnership to have been fatal to the petitioners' claims. Likewise, the fact that this partnership was not publicized we do not consider to be determinative of petitioners' tax status. The partnership was not publicized when Reilly was in partnership with Nelson. The business was conducted under Reilly's name under both of these partnerships and as it had been done *227 since 1933 when he started in business for himself. Neither do we consider the fact that there was no capital division on the partnership books because there was no capital of any consequence to divide. Furthermore, we do not give the wieght to the failure of Reilly to file partnership income tax returns in 1939, 1940 and 1941, which the Commissioner ascribes to those acts. During these years the taxable income of this partnership was so small that after the deductions to which Reilly was entitled, $3,200 in 1940 and $2,700 in 1941, the tax savings of a partnership over a joint return were nominal and Reilly's knowledge of income tax law was evidently not as profound as was his understanding of workmen's compensation law. In 1942, however, when the partnership income was double that of the previous year Reilly undoubtedly obtained from some source income tax information which he had not possessed before and found that a partnership return was not only a requirement of the revenue law but a very helpful factor in reducing the income tax of his wife and him. He therefore filed a partnership return for 1942 and was confronted with the fact that if he stated that his partnership antedated *228 the year of his first partnership return, he might be involved in legal difficulties. He therefore made a very natural statement that the partnership began with the beginning of the first year in which a partnership return was filed. Of course this statement on the partnership return, conflicting as it does with the testimony of the partners, as to the date of the formation of the partnership, is one of the factors which this Court must consider in arriving at the ultimate fact as to whether or not an actual partnership was formed in 1939. This fact must be considered along with all of the other facts developed by the testimony and evidence. In that testimony is the uncontradicted statement of both Reilly and his wife that a partnership was formed in 1939, together with the evidence of the conduct of the parties which conform in every way to the conduct of partners. Of even more importance, this Court observed the manner in which the petitioner and his wife testified and told their story. The Court was favorably impressed with the frankness and apparent truthfulness of the witnesses and the Court believes from all of the testimony, evidence and demeanor of the witnesses that a partnership *229 in this case was formed in 1939. The cases before this Court involving family partnerships are all clearly distinguishable on the facts. However, the case of , has much in common with the case at bar. There the wife's contribution was almost wholly of service and the partnership agreement was not any too definite. The partnership funds were kept in a joint account as in the case at bar and both parties drew therefrom as the need arose. See also , where the Court says: This is not a business where the income was attributable primarily to the employment of capital or to the personal services of the petitioner. * * * We have determined that the wife's personal services were ample to support the partnership agreement, and under that agreement she was entitled to receive and did receive one-half of the profits of the business. * * * We are therefore of the opinion that there was a partnership existing between the taxpayer and his wife beginning in the fall of 1939 and that it became effective for income tax purposes for the calendar years of 1942 and 1943. Decision will be entered for the petitioner.